Filed 5/15/23  P. v. Parker CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060887 |
| v. | (Super. Ct. No. 18ZF0006) |
| YULONDA PARKER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

After a bench trial, appellant Yulonda Parker was convicted of the following offenses involving her stepgranddaughter L.H.: torture (Pen. Code, § 206;[1] count 1); child abuse (§ 273a, subd. (a); count 2); and three counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3-5). Each count of assault with a deadly weapon involved a different weapon: a mallet in count 3; a knife in count 4; and a metal baseball bat in count 5. The court found Parker personally inflicted great bodily injury upon L.H. during the commission of the child abuse offense in count 2 and the assaults with deadly weapons in counts 3 and 4. (§ 12022.7, subd. (a).) The court found not true the allegation Parker personally inflicted great bodily injury in the assault with the baseball bat in count 5. Parker was sentenced to life in prison for her torture conviction in count 1. The court imposed and stayed the sentences on the remaining counts and enhancements under section 654.

On appeal, Parker contends the evidence was insufficient to support her assault conviction involving the metal baseball bat in count 5 and the conviction must be reversed. She asserts the prosecution failed to prove she used the bat in a manner likely to cause death or great bodily injury. We disagree. While L.H. did not directly testify as to how much force Parker used when striking her with the metal bat, the court could reasonably infer such from the bat's composition and the significant injuries it caused to L.H.'s legs. Thus, we reject Parker's contention and affirm the judgment.

## FACTS[2]

After running away from her mother, L.H. went to live with her father, her stepmother, and their three children in Anaheim. Parker, L.H.'s stepgrandmother, lived nearby.

---

[1] All further statutory references are to the Penal Code.

[2] In light of the issue raised on appeal, we provide an abbreviated summary of the facts.

L.H. was 14 years old and had a difficult time adjusting to living with her father and his family, all of whom she barely knew. Her stepsiblings made accusations against her, and her behavior did not always conform to what her father, stepmother, and Parker expected of her. Beginning in 2018, when L.H. was 15 years old, she was physically abused by her father, stepmother,[3] and Parker.

In June 2018, L.H.'s stepmother took her to the home of her stepmother's childhood friend in Los Angeles. Her stepmother told the friend things had gone "too far" and asked if L.H. could stay with her while L.H.'s injuries healed. The friend refused because she was opposed to the abuse being inflicted upon L.H. and did not want to be involved. L.H. and her stepmother left, but later that day, L.H. was dropped off at the friend's house. The friend took L.H. to a Los Angeles police station. The police interviewed L.H. and took her to a hospital.

The doctor who treated L.H. noted she had extensive injuries. L.H. had two black eyes, a broken nose, swollen lips, broken teeth, broken bones, and burns. She had bruises, scars, healing wounds, and open wounds all over her body. L.H. was very pale, and her extremities were swollen.

L.H. had scars and bruises on her back from Parker twice whipping her with an extension cord. On multiple occasions, Parker bit L.H. and left bite marks on L.H.'s back and arm. Parker struck L.H.'s hands with a rubber mallet multiple times, fracturing two fingers on one hand and breaking a finger on the other. Parker hit L.H. in the mouth with the handle end of a knife several times, chipping L.H.'s two front teeth. She also struck L.H. in the mouth with the handle of a pair of scissors, causing injury to L.H.'s lips. Parker used a cane to hit L.H. in the head numerous times.

---

[3] L.H.'s father and stepmother were jointly tried with Parker and convicted of torture and child abuse and found to have personally inflicted great bodily injury in the commission of the child abuse offense. The court also found L.H.'s stepmother guilty of assaulting L.H. with a deadly weapon, a knife. As they are not parties to this appeal, we do not discuss the facts underlying their convictions.

As for L.H.'s lower extremities, Parker stabbed the bottom of L.H.'s feet with a sewing needle, causing numerous small puncture wounds. She hit L.H. in the legs with a metal baseball bat several times, causing bruising. L.H. had bruising on her inner thighs, the back of her thighs, and the back of her knees. Her legs were swollen, bruised, and tender from her knees to her feet. Because of the injuries to her feet and legs, L.H. had difficulty walking when she was taken to the hospital. Upon seeing L.H.'s swollen legs, the doctor thought they were broken, but x-rays showed no broken bones. L.H. remained in the hospital for two to three weeks while she recovered from her injuries.

## DISCUSSION

Parker contends her conviction for assault with a deadly weapon in count 5, which was based on her hitting L.H. with a metal baseball bat, must be reversed because the evidence was legally insufficient to prove she used the bat in a manner likely to cause death or great bodily injury. We conclude her conviction is supported by substantial evidence.

### I.

#### APPLICABLE LEGAL PRINCIPLES

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] Our review must presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.]" (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.) "'"A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."'"

4

(*People v. Perez* (1992) 2 Cal.4th 1117, 1133.) "'"'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"' [Citations.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the [trier of fact]'s verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Based on her use of a metal baseball bat to hit L.H., Parker was convicted of assault with a deadly weapon in violation of section 245, subdivision (a)(1), which prohibits the commission of "an assault upon the person of another with a deadly weapon or instrument . . . ." As used in this statute, "'a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."' [Citation.]" (*In re B.M.* (2018) 6 Cal.5th 528, 532-533 (*B.M.*).) Some objects, such as blackjacks and dirks, have been found to be deadly weapons as a matter of law. (*Id.* at p. 533.) "Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029.)

In *B.M.*, our Supreme Court elucidated three principles that help guide the analysis as to whether an object that is not inherently deadly or dangerous is used as a deadly weapon in violation of section 245, subdivision (a)(1). (*B.M., supra*, 6 Cal.5th at pp. 533-537.) "First, the object alleged to be a deadly weapon must be used in a manner that is not only 'capable of producing' but also '"*likely to produce* death or great bodily injury."' [Citation.]" (*Id.* at p. 533.) The Supreme Court explained, "The use of an

5

object in a manner 'likely to produce' death or great bodily injury [citation] requires more than a mere possibility that serious injury could have resulted from the way the object was used." (*Id.* at p. 534.)  Second, the trier of fact may not speculate "as to how the object could have been used." (*Ibid.*)  Instead, the determination of whether the item is a deadly weapon "must rest on evidence of how the defendant actually 'used' the object. [Citations.]" (*Ibid.*)  "Although it is inappropriate to consider how the object could have been used as opposed to how it was actually used, it is appropriate in the deadly weapon inquiry to consider what harm could have resulted from the way the object was actually used." (*Id.* at p. 535.)  "[A] mere possibility of serious injury is not enough.  But the evidence may show that serious injury was likely, even if it did not come to pass." (*Ibid.*)  "Third, . . . the extent of actual injury or lack of injury is also relevant." (*Ibid.*)

With these principles in mind, we consider Parker's argument the evidence was legally insufficient to prove she used the metal baseball bat in a manner capable of producing and likely to produce death or great bodily injury because L.H. did not testify as to the force used or the specific manner in which Parker struck her with the bat.

II.

SUBSTANTIAL EVIDENCE SUPPORTS PARKER'S CONVICTION

The court reasonably found Parker's manner of hitting L.H. with the metal baseball bat made it a deadly weapon.  L.H. testified the injuries to her legs were caused by Parker hitting her with the metal baseball bat several times.  The doctor who treated L.H. at the hospital described bruising on L.H.'s inner thighs, the back of her thighs, the back of her knees, and from her knees to her feet.  L.H.'s legs were so swollen and bruised, the doctor initially believed L.H.'s legs were broken.  The detective who spoke to L.H. at the hospital also noted the injuries to her legs and testified L.H.'s legs were so swollen and bruised there was no difference in the size of her thighs and calves.  A photograph of the bruising on the front of the lower half of L.H.'s legs was admitted into evidence.  Because of the injuries to her feet and legs, L.H. had difficulty walking.  Based

6

on the extent of the injuries to L.H.'s legs, the court could reasonably infer the degree of force Parker used to strike her with the metal baseball bat. (See *B.M., supra*, 6 Cal.5th at p. 535 [extent of actual injury is relevant in determining whether object was used as a deadly weapon under § 245, subd. (a)(1)]; *People v. Brown* (2012) 210 Cal.App.4th 1, 7 ["the nature of . . . injuries and their location are relevant facts for consideration in determining whether an object was used in a manner capable of producing and likely to produce great bodily injury"].) L.H.'s injuries indicate the blows were forceful and the metal baseball bat was used in a manner likely to produce great bodily injury. (*People v. Aguilar, supra*, 16 Cal.4th at p. 1029.)

Relying on *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*), Parker asserts the bruising on L.H.'s legs is insufficient by itself to prove Parker used the metal baseball bat in a manner likely to produce death or great bodily injury. But *Beasley* is readily distinguishable from the instant matter. In *Beasley*, the defendant was convicted of assault with a deadly weapon after he hit the victim's arms and shoulders with a broomstick and caused bruising in those areas. (*Id.* at p. 1087.) The victim's testimony was "cursory," and she did not describe the degree of force the defendant used when hitting her with the broomstick. (*Ibid.*) The Court of Appeal held the evidence was insufficient to support the defendant's conviction because the record did not indicate the composition of the broomstick, whether it "was solid wood or a hollow tube made of metal, fiberglass, or plastic" (*ibid.*), and evidence concerning the "composition, weight, and rigidity [of the broomstick] would necessarily affect the probability and likelihood that it could cause great bodily injury" (*id.* at pp. 1087-1088). The Court of Appeal concluded that without this evidence, the jury could not assess the degree of force the defendant used when hitting the victim with the broomstick. (*Id.* at p. 1088.) The *Beasley* court also found the evidence of the victim's injuries was insufficient to prove the defendant used the broomstick as a deadly weapon because her bruises were not "extensive" or "severe." (*Ibid.*)

7

Here, in contrast, the evidence established Parker used a metal baseball bat to strike L.H.'s legs multiple times. A baseball bat is capable of producing death or great bodily injury. (See *People v. Moye* (2009) 47 Cal.4th 537, 540 [defendant bludgeoned victim to death with baseball bat]; *People v. Loeun* (1997) 17 Cal.4th 1, 6-7 [defendant convicted of assault with deadly weapon for hitting victim in head and on shoulder and arm with baseball bat].) Thus, the nature of the object Parker used was substantially different from the undescribed broomstick in *Beasley*.

Additionally, the injuries L.H. suffered to her legs are more substantial than those described in *Beasley* and can be characterized as "extensive" and "severe." (*Beasley, supra*, 105 Cal.App.4th at p. 1088.) Parker points to the court's not true finding on the great bodily injury enhancement and asserts the evidence of L.H.'s injuries was insufficient to prove she actually used the metal bat in manner likely to cause death or great bodily injury. But this logic is flawed. "'[A] conviction for assault with a deadly weapon does not require proof of an injury or even physical contact' [citation] . . . ." (*B.M., supra*, 6 Cal.5th at p. 535.) Thus, the court's not true finding on the great bodily injury enhancement does not mean the metal baseball bat was not used in a manner *likely to produce* serious bodily injury. Based on the nature of the object, a metal baseball bat, and the injuries to L.H.'s legs, the court could reasonably infer Parker used the bat in a manner that was both capable of producing and likely to produce great bodily injury. Accordingly, the evidence supports Parker's conviction for assault with a deadly weapon in count 5.

DISPOSITION

The judgment is affirmed.


MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


DELANEY, J.